**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DORANCE MOSQUERA-JARA,<br><br>Petitioner,<br><br>v.<br><br>SAM OLSON, MARKWAYNE MULLIN, TODD BLANCHE, SCOTT SMITH, US DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and DALE J. SCHMIDT,<br><br>Respondents. | Case No. 26-CV-1416-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Dorance Mosquera-Jara ("Petitioner") arrived in the United States in June 2023 and was detained by Immigrations and Custom Enforcement ("ICE") in February 2026 when he appeared at a court hearing in connection to traffic tickets and driving without a license. ECF No. 1-2 at 33–34. Petitioner requested a bond hearing, which the government refused on jurisdictional grounds. *Id.* at 34. He then filed a habeas petition in this District in accordance with 28 U.S.C. § 2241. *Id.* at 28–39. Chief Judge Pamela Pepper granted the petition and ordered that Petitioner receive a bond hearing. *Id.* at 43–65; *Mosquera-Jara v. Olson*, No. 26-CV-412-PP, 2026 WL 2138040 (E.D. Wis. July 24, 2026). At his bond hearing, the immigration judge found that Petitioner was a danger to the community and a flight risk, refusing to release him on bond. ECF No. 12-2.

Petitioner now comes before the Court with a new petition for a writ of habeas corpus, arguing that his bond hearing did not comport with due process or Chief Judge Pepper's previous habeas order. ECF No. 1. The Court agrees and will grant the petition and order that Petitioner be released within twenty-four (24) hours of this Order.

**2. FACTS**

Petitioner is a Colombian citizen who entered the United States without inspection in June 2023. *Mosquera-Jara v. Olson*, 2026 WL 2138040, at *1. U.S. Customs and Border Patrol agents detained him in Arizona, near the United States-Mexico border. *Id.* Petitioner was placed in removal proceedings pursuant to 8 U.S.C. § 1182, but the Border Patrol released him two days after he was apprehended because he obtained a Form I-220A, Order of Release on Recognizance ("ORR"). *Id.*

Petitioner applied for asylum, but, at his final asylum hearing, the immigration judge denied his application. ECF No. 1 at 1. He appealed the denial; his appeal remains pending and the Board of Immigration Appeals ("BIA") has not indicated when a ruling might be issued. *Id.*

Petitioner was apprehended on February 24, 2026:

> [T]he petitioner went to a court hearing at the Walworth County Circuit Court related to traffic tickets and a bail jumping charge for driving without a license. . . . Before he made his appearance, ICE agents arrested the petitioner outside the courtroom and transferred him to the Dodge County Jail, where he remains. ICE also issued the petitioner with notice cancelling his ORR.

*Mosquera-Jara v. Olson*, 2026 WL 2138040, at *1. Petitioner then requested a bond hearing, which was denied on the grounds that the immigration judge lacked jurisdiction. *Id.* at *2 (citation omitted). Petitioner filed a habeas petition in this Court, which Chief Judge Pepper granted. *See generally id.*

In her order, Chief Judge Pepper required that Petitioner receive a bond hearing, at which "the government must bear the burden of justifying the petitioner's continued detention by proving, by clear and convincing evidence, the petitioner's dangerousness or flight risk" or release Petitioner if the government could not do so. *Id.* at *10.

At Petitioner's hearing, the immigration judge stated that the government bore the burden of showing that Petitioner was a danger to the community or a flight risk by clear and convincing evidence. ECF No. 12-2 at 1:15–1:31. The government argued that bond should be denied because Petitioner was a flight risk and a danger to the community. *Id.* at 1:40–1:48. The government offered Petitioner's traffic tickets for driving without a license, speeding, and driving without insurance to support its dangerousness argument and cited to *Portillo-Rendon v. Holder*, 662 F.3d 815 (7th Cir. 2011) in support of its argument. *Id.* at 1:48–4:35.[1] The government

[1]This Court's own review of Petitioner's criminal history in Wisconsin uncovered four cases, but it is clear from the record this is not the full extent of Petitioner's traffic troubles, so the Court does not consider the active cases to be an exclusive listing. *State of Wisconsin v. Dorance Mosquera Jara*, 2025CT000474 (Kenosha Cnty. Cir. Ct. 2025) (charged with driving without a license, dismissed on prosecutor's motion), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CT000474&countyNo=30&index=0&mode=details (last visited on []); *State of Wisconsin v. Dorance Mosquera Jara*, 2026CT000057 (Walworth Cnty. Cir. Ct. 2026) (charged with driving without a license, currently pending), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2026CT000057&countyNo=64&index=0&mode=details (last visited on []); *State of Wisconsin v. Dorance Mosquera Jara*, 2026CM000240 (Kenosha Cnty. Cir. Ct. 2026) (charged with driving without a license and bail jumping, currently pending), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2026CM000240&countyNo=30&index=0&mode=details (last visited on []); *State of Wisconsin v. Dorance Mosquera Jara*, 2026CM000114 (Walworth Cnty. Cir. Ct. 2026) (charged bail jumping, currently pending), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2026CM000114&countyNo=6

also represented that Petitioner had been charged with bail jumping for not attending the court hearings in connection the traffic matters. *Id.* The dates of Petitioner's bail jumping charges coincide with his detention by ICE: because ICE imprisoned him, he could not attend the court hearings. *See id.*; *see also* ECF No. 14 at 3. And of Petitioner's four active cases within Wisconsin, only one reached a final determination, *Mosquera-Jara*, 2025CT000474, which was dismissed on the prosecutor's motion.

The government proceeded to argue that Petitioner was a flight risk primarily because of the order of removal against him. ECF No. 12-2 at 4:45–7:20. The government stated in this argument that "[a]ll of these things" supported flight risk, which was ambiguous as to whether it intended to incorporate its argument in support of dangerousness into its argument in support of flight risk. *See id.*

The immigration judge denied bond based on both dangerousness and flight risk. *Id.* at 13:50–19:13. The immigration judge found that Petitioner was a danger to the community based on Petitioner's "extensive criminal history": his traffic tickets and bail jumping "convictions." *Id.* at 13:50–15:33. The immigration judge relied on the Seventh Circuit's opinion in *Portillo-Rendon* in issuing its decision on dangerousness. *Id.* The immigration judge found that Petitioner was a flight risk based on Petitioner's arrests for driving without a license and bail jumping. *Id.* at 16:28–19:13. His flight risk determination relied on *In re A-L-S*, 29 I&N Dec. 794 (B.I.A. 2026), which held that flight risk concerns not just an alien's

---

4&index=0&mode=details (last visited on []). The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

appearance at future hearings but also whether the alien is likely to comply with future orders. *Id.* The immigration judge's written decision is a check-marked form that states bond was denied because "The [Petitioner] is a danger to the community. The [Petitioner] is a flight risk." ECF No. 14-1 at 28.

Petitioner suggests in his reply brief that the justification for driving without a license has now ceased ECF No. 14 at 3. Petitioner states that he was driving as his partner was experiencing medical difficulties relating to her pregnancy and that she was advised to rest. *Id.* Petitioner also states that he was in the process of attempting to remediate his driving-related matters. He obtained a learner's permit in January 2026 and attempted a driver's test in February before being arrested. *Id.* at 2–3. Petitioner's counsel argued these facts before the immigration judge at the bond hearing. ECF No. 12-2 at 7:35–13:40.

## 3. ANALYSIS

Petitioner argues that the bond hearing failed to comport with due process and Chief Judge Pepper's previous order by not applying the correct standard to the determination that Petitioner was a flight risk and a danger to the community, and that he should receive a new hearing or be released accordingly. *See* ECF No. 1. Respondents argue that this Court lacks jurisdiction to review the immigration judge's decision, that Petitioner failed to exhaust his administrative remedies, and that the bond hearing complied with due process and the previous habeas order. *See generally* ECF No. 11.

### 3.1 Jurisdiction

Petitioner argues that the Court has two routes to jurisdiction: (1) the Court retains jurisdiction over the previous habeas order to ensure

compliance, or (2) the Court may review the constitutional adequacy of the immigration judge's bond hearing. ECF No. 14 at 1. Respondents argue that 8 U.S.C. § 1226(e) precludes judicial review. ECF No. 11 at 4–5. For the reasons explained below, Respondents are incorrect.

#### 3.1.1 The Court Retains Jurisdiction Over Constitutional Issues

It is well settled that an immigrant detainee may challenge the constitutionality of his detention and that the Due Process Clause applies to all persons within the United States. *Suarez-Gonzalez v. Olson*, Case No. 26-CV-590-JPS, 2026 WL 2169410, at *6 (citing *Rodriguez v. Olson*, 814 F. Supp. 3d 945, 959 (N.D. Ill. 2026) and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). This includes when an immigrant detainee has been granted a bond hearing and then argues that the hearing did not comply with due process. *E.g.*, *Garcia Ortiz v. Henkey*, No. 1:26-CV-00043-BLW, 2026 WL 948275, at *2 (D. Idaho Apr. 7, 2026); *Mendez v. Dedos*, No. 1:26-CV-00394-KG-JHR, 2026 WL 973077, at *2 (D.N.M. Apr. 10, 2026); *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 553 (D.N.J. 2026). Whether the evidence is sufficient to support the immigration judge's decision is distinct from the immigration judge's discretionary weighing of the evidence. And an absence of jurisdiction over constitutional challenges to detention presents constitutional issues. *I.N.S. v. St. Cyr*, 533 289, 300 (2001) *superseded by statute as stated by Nasrallah v. Barr*, 590 U.S. 573, (2020).

#### 3.1.2 The Court Retains Jurisdiction Over Its Habeas Order

Similarly, it is well settled that courts maintain ongoing jurisdiction over a conditional grant of habeas. *E.g.*, *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019) ("When a district court issues a conditional habeas writ, it

retains jurisdiction to determine compliance." (citing *Hudson v. Lashbrook*, 863 F.3d 652, 656 (7th Cir. 2017))); *Phifer v. Warden, U.S. Penitentiary*, 53 F.3d 859, 865 (7th Cir. 1995) ("When a habeas petitioner alleges noncompliance with a conditional order, jurisdiction exists for the purpose of determining whether the state acted in accordance with the court's mandate."). This includes when an immigrant detainee has been granted a bond hearing and then argues that the hearing did not comply with due process. *E.g.*, *Akhemedov v. Pittman*, No. 25-13734 (MCA), 2026 WL 323404, at *2 (D.N.J. Feb. 6, 2026); *Mendez*, 2026 WL 973077, at *2; *Zheng*, 826 F. Supp. 3d at 553. Therefore, the Court may review the immigration judge's decision for compliance with the previous habeas order. Respondents agree. *See* ECF No. 11 at 3 ("As the Court correctly noted in its Rule 4 Screening Order, 'courts retain jurisdiction to ensure compliance with their previously issued orders granting habeas relief.'" (citation omitted)). Without jurisdiction over issued orders, the Court risks writing dead letters.

Further, to the extent reviewing the immigration judge's decision for compliance with the previous habeas order or constitutional due process requires delving into the merits of the immigration judge's decision, the Court may do so. Courts across the country have held that, in view of the Supreme Court's decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), an immigration judge's determinations of flight risk or dangerousness are both reviewable as mixed questions of fact and law. *E.g.*, *Correia De Pina v. Moniz*, No. 26-CV-12262-AK, 2026 WL 2593316, at *3 (D. Mass. Sep. 2, 2026); *Gupta v. Brackett*, No. 1:26-CV-207-PB-TSM, 2026 WL 1734839, at *2 (D.N.H. June 16, 2026); *España v. Nessinger*, 837 F. Supp. 3d 334, 347 (D.R.I. 2026); *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *5 (W.D. Ky. June 30, 2026); *Portillo Melara v. Tellez*, No. 26-CV-1453 (AMD), 2026 WL 1146054, at *3–5

(E.D.N.Y. Apr. 28, 2026) (assuming without deciding the court may review the decision); *but see Grant-Davis v. Anda-Ybarra*, No. 2:26-CV-00054-MIS-LF, 2026 WL 823095, at *4–6 (D.N.M. Mar. 23, 2026) (declining to extend *Wilkinson*).[2]

### 3.2 Petitioner Is Not Required to Exhaust His Administrative Remedies

Respondents argue that regardless of this Court's determination as to jurisdiction, Petitioner is nevertheless required to exhaust his administrative remedies and appeal the immigration judge's decision to the BIA, which Petitioner has not done. ECF No. 11 at 5–8. Petitioner replies that requiring exhaustion is discretionary and that this Court is the appropriate forum to enforce the Court's previous habeas order. ECF No. 14 at 4.

Respondents state that requiring exhaustion is inappropriate when "requiring exhaustion of administrative remedies causes prejudice due to unreasonable delay or an indefinite timeframe for administrative action . . . or . . . where substantial constitutional questions are raised. *See* ECF No. 11 at 6 (citing *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004)).

---

[2]In *Wilkinson v. Garland*, the Supreme Court recently clarified that the application of a legal standard to a set of facts was reviewable under 8 U.S.C. § 1252(a)(2)(D), which permits judicial review of questions of law. 601 U.S. 209, 212 (2024). In *Martinez v. Clark*, the Ninth Circuit applied *Wilkinson* to hold that an immigration judge's bond decision under 8 U.S.C. § 1226 was reviewable by a district court as a question of law—rather than a discretionary judgment—because it involved the application of the legal standard for dangerousness and flight risk to the facts of the detainee. 124 F.4th 775, 781–85 (9th Cir. 2024). However, because the Court may resolve this case based on its review of compliance with the previous habeas order and due process, the Court does not reach the issue of whether it may directly review the immigration judge's decision for abuse of discretion.

Petitioner has been detained for eight months now, ECF No. 1 at 1, and the BIA has a backlog of over 200,000 cases. *Suarez-Gonzalez*, 2026 WL 2169410, at *8. Accordingly, any appeal would likely take years to be heard. The Court will therefore not require exhaustion. And, independently of the issue of indefinite delay for disposition of Petitioner's appeal of the bond decision, because this Court finds that Petitioner's claim raises substantial constitutional issues, exhaustion is not necessary. *See Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017).

Respondents additionally argue that Petitioner did not challenge the immigration judge's flight risk determination, which would justify Petitioners' detention independently of the dangerousness determination. ECF No. 11 at 7. However, Petitioner in his reply indicated that he intended to challenge the flight risk determination as well. ECF No. 14 at 2. Because the Court construes pro se pleadings liberally, *Gould v. Schneider*, 448 Fed. App'x 615 618 (7th Cir. 2011), and Petitioner has explicitly challenged the flight risk determination in his reply, the Court does not find Respondents' arguments here persuasive.

### 3.3 The Immigration Judge's Decision Violated Due Process and the Court's Habeas Order

Having found that neither the jurisdictional nor administrative exhaustion hurdles bar Petitioner, the Court now turns to the merits of his petition. Because the previous order imposed the requirements mandated by due process, the Court addresses compliance with that order and the requirements of due process concurrently.

While Respondents do not contest that the previous order is binding, they do suggest that due process does not require that the government bear the burden by clear and convincing evidence. ECF No. 11 at 3–4. They also

cite to *Cirrus Rojas v. Olson* to suggest that the Seventh Circuit does not see a constitutional issue in immigrant detainees bearing the burden of showing that they are not dangerous or flight risks. *Id.* at 4 (citing 183 F.4th 909, 917 (7th Cir. 2026)).

As explained in this Court's recently issued order, the Seventh Circuit ruled narrowly in *Cirrus Rojas* and the due process issue of the burden of proof was not before the court. *Suarez-Gonzalez v. Olson*, Case No. 26-CV-590-JPS, ECF No. 29, 9–10 (E.D. Wis. Oct. 5, 2026) ("The immigration judges there found that the petitioner was not a flight risk or danger to the community. Therefore, there was no reason for the court to reach the due process issue of the burden at bond hearings.") (internal citations omitted); *see also Cirrus Rojas*, 183 F.4th at 915 ("Our holding is limited. We deal only with whether *all* aliens present without admission in the interior and facing removal proceedings are subject to mandatory detention.").

The Court therefore sees no reason to disturb the previous habeas order. As Judge Pepper stated there, due process required Respondents to provide Petitioner with a bond hearing, at which the government must have born the burden of proof to justify his continued detention by clear and convincing evidence. *Mosquera-Jara v. Olson*, 2026 WL 2138040, at *10.

Petitioner argues that the government failed to justify Petitioner's continued detention by clear and convincing evidence. ECF No. 1 at 1–2; ECF No. 14 at 1 ("[Petitioner] asks whether the process that continues to deprive him of liberty meaningfully complied with the safeguards imposed by the prior federal habeas judgment and with due process."). Respondents argue that the immigration judge properly applied the standards as ordered. ECF No. 11 at 3–5.

The evidence presented to the immigration judge was plainly deficient. Clear and convincing evidence requires "an abiding conviction that the truth of [the government's] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). The evidence should be "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990) (quotes and citation omitted).

The immigration judge based his ruling on both the flight risk and dangerousness determinations on Petitioner's bail jumping charges and his traffic citations.

Petitioner's bail jumping charges cannot provide support for either finding. Petitioner argues, "ICE had already taken Petitioner into custody" thereby causing "his inability to attend the later . . . proceeding." ECF No. 14 at 3. In essence, the government caused Petitioner's absence, leading to the charge against him, and then justified further detaining Petitioner based on its initial detention. This circular logic is unacceptable. *See United States v. Worthen*, 842 F.3d 552, 555 (7th Cir. 2016). Further, the immigration judge failed to abide by due process by justifying detention based on charges that were never formally adjudicated. *See Cesvette v. Moniz*, No. 26-CV-12662-AK, 2026 WL 2494666, at *3 (D. Mass. Aug. 25, 2026) ("Continued detention resting solely on an arrest never tested 'following the full procedural protections our criminal justice system offers' lacks the neutral fact-finding that due process requires." (citing *Doe v. Moniz*, 800 F. Supp. 3d 203, 216 (D. Mass. 2025))). The present circumstances illustrate the principle that detention based on charges that were never adjudicated "lacks the neutral fact-finding due process requires," *id.*, as Petitioner has a valid defense to

the bail jumping charges: he intended to comply with the conditions of his bond. WIS. STAT. § 946.49(1) ("Whoever, having been released from custody . . . *intentionally fails* to comply with the terms of his or her bond . . . ." (emphasis added)). The bail jumping charges were not properly before the immigration judge, and his reliance on them violated the requirements of due process.

This leaves the traffic citations themselves. In finding that the traffic tickets demonstrated that Petitioner was a danger to the community, the immigration judge relied on the Seventh Circuit's decision in *Portillo-Rendon*. 662 F.3d at 815. In *Portillo-Rendon* the court held that it lacked jurisdiction to review an application for cancellation of removal under 8 U.S.C. § 1229b(b)(1). *Id.* at 816. The Seventh Circuit did note, "[d]riving while intoxicated or without a license reflects both indifference to the welfare of other drivers and pedestrians and defiance of known legal obligations." *Id.* at 816. But it is not clear from the context of the ruling whether this was recounting the immigration judge's position or the view of the Seventh Circuit. *Id.* ("Among the requirements for cancellation of removal is 'good moral character.' The immigration judge concluded that Portillo–Rendon lacks it, given his disdain for the rules that govern the use of automobiles. Driving while intoxicated or without a license . . . ."). The Court cannot read this ambiguous statement in dicta as precedent binding upon it and supporting the immigration judge's view.

Driving while intoxicated may certainly reflect indifference to the safety of other drivers and pedestrians. However, driving without a license does not bear a connection to such danger; rather driving without a license reflects a disregard for "known legal obligations." *Id.* Additionally, the immigration judge found at the hearing that the offenses "were not violent

in nature," a finding which this Court lacks jurisdiction to disturb. ECF No. 12-2 at 15:38–15:48; *see supra* n.2; *see also* 8 U.S.C. § 1226(e).

As other courts have found more serious driving infractions insufficient to establish by clear and convincing evidence that a detainee is a danger to society, this Court follows suit. *See, e.g.*, *Mbiya v. Doe*, No. 1:26-CV-00467-JL-TSM, 2026 WL 2098764, at *7 (D.N.H. July 21, 2026) (holding fatal traffic accident where petitioner was not at fault insufficient as a matter of law to establish clearly and convincingly that petitioner was a danger to society); *Rivera v. Valdez*, No. 26-CV-01765-NRN, 2026 WL 2137800, at *5 (D. Colo. July 23, 2026) (old DUI conviction and disturbing the peace conviction insufficient as a matter of law to establish dangerousness); *A.A.G.R. v. Baltazar*, No. 26-CV-02344-RMR, 2026 WL 2110577, at *2 (D. Colo. July 22, 2026) (ambiguous record as to whether the petitioner's DUI was an arrest or formally adjudicated conviction was insufficient as a matter of law to establish by clear and convincing evidence that the petitioner was a danger to society). The Court holds that minor, non-violent traffic citations, the justification for which has ceased and which Petitioner has taken concrete steps to remediate, are insufficient as a matter of law to establish clearly and convincingly, without hesitation of the truth thereof, that Petitioner is a danger to society.

Similarly with respect to the flight risk determination, the only evidence validly before the immigration judge were the traffic citations. However, disregard for traffic laws does not reasonably relate to whether petitioner is a flight risk when the Petitioner demonstrates active efforts to comply and was in the process of attending court hearings related to those citations. "Such circumstances tend to diminish rather than strengthen any inference" that Petitioner is likely to abscond. *Mbiya*, 2026 WL 2098764, at

*7 (petitioner did not attempt to flee traffic accident, stayed at the scene, and cooperated with law enforcement, which diminished likelihood the petitioner would flee). Therefore, this Court holds that minor traffic citations, the justification for which has ceased and which Petitioner has taken concrete steps to remediate, ECF No. 14 at 3, are insufficient as a matter of law to establish by clearly and convincingly, without hesitation of the truth thereof that Petitioner is a flight risk.

Therefore, this Court holds that the immigration judge's decision failed to comply with previous habeas order and due process. The evidence before the immigration judge on both the flight risk and dangerousness determinations was plainly deficient of clear and convincing evidence. "Due process is not satisfied by rubberstamp denials of bond." *Rivera*, 2026 WL 2137800, at * 6 (citation omitted).

**3.4 Petitioner's Case Warrants Immediate Release**

Petitioner requests that he be released "subject to reasonable conditions of supervision." ECF No. 14 at 4; *see also* ECF No. 1 at 2 ("[I]f Respondents cannot satisfy the required burden of proof," Petitioner requests the Court order his release.). Respondents did not present an argument regarding remedy.

Respondents would not be able to satisfy the required burden of proof. As the above analysis shows, the evidence at hand is plainly deficient. Petitioner's detention since February precludes the development of additional facts which might provide substantive support for a ruling to the contrary at a subsequent bond hearing. Therefore, the Court will order that Petitioner be immediately released. *See Garcia Ortiz*, 2026 WL 948275, at *4 (ordering release because it was "clear that a second bond hearing

would not remedy the legal violation" (citing *Perez Sierra v. Margolin*, No. 25-18829, 2026 WL 800158, at *4 (D.N. J. Mar. 23, 2006))).

Additionally, although Petitioner proposed conditions of bond, this Court recognizes it is removed from the conditions of Petitioner's detention and the government's ability to monitor compliance. Accordingly, the Court will not impose conditions of bond at this time. Rather, Petitioner and Respondents are directed to confer on reasonable conditions of bond. The Court will provide guidance should the parties be unable to agree on reasonable conditions of bond.

### 3.5 Respondents' Motion for Extension of Time Is Granted

As Respondents initially failed to file a response to Petitioner's habeas petition within the briefing schedule set in ECF No. 4, the Court ordered that Respondents file a motion for an extension of time pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), which allows for filing out of time on a showing of excusable neglect. ECF No. 7. Upon consideration of the motion, ECF No. 8, the Court finds that Respondents have demonstrated excusable neglect for the delay and grants the motion.

## 4. CONCLUSION

For the reasons stated above, the immigration judge failed to abide by the requirements of due process and the previous habeas order. Another bond hearing would not remedy the evidentiary defects Petitioner has identified. Therefore, the Court will order that Petitioner be released within **twenty-four (24) hours** of receipt of this order, that Respondents and Petitioner confer on reasonable conditions of bond within **seven (7) days** of receipt this order, and that following conferral Petitioner will submit a joint status report on the conditions of bond. If Petitioner and Respondents are

unable to come to agreement on reasonable conditions of bond, this Court will provide guidance should it prove necessary.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Respondents' motion for an extension of time, ECF No. 8, be and the same hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that within **twenty-four (24) hours** of this Order, Petitioner be released; and

**IT IS FURTHER ORDERED** that within **seven (7) days** of this Order, Petitioner and Respondents confer on reasonable conditions of bond and submit a joint status report on the conditions of bond; if Petitioner and Respondents are unable to come to agreement on reasonable conditions of bond, this Court will provide guidance should it become necessary.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of October, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge